IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LAWRENCE WOODELL, JR.                                              PLAINTIFF

V.                    Case No. 4:24-CV-00502-LPR-BBM

LELAND DUDEK, Acting Commissioner,
Social Security Administration[1]                                  DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.   INTRODUCTION**

On July 16, 2020, Plaintiff Lawrence Woodell, Jr. ("Woodell") filed a Title II application with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits. (Tr. at 14). On the same day, he protectively filed a Title XVI application for supplemental security income. *Id*. In the applications, he alleged disability

---

[1] Leland Dudek serves currently as Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Dudek ("the Commissioner") is automatically substituted as the Defendant.

beginning on May 1, 2020. *Id*. The applications were denied initially and on reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied Woodell's applications by written decision, dated July 19, 2023. (Tr. at 14–28). The Appeals Council denied Woodell's request for review of the ALJ's decision on April 26, 2024. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Woodell has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.   THE COMMISSIONER'S DECISION

The ALJ found that Woodell has not engaged in substantial gainful activity since May 1, 2020—the alleged onset date of disability.[2] (Tr. at 16). Woodell meets the insured status requirements of the Social Security Act through December 31, 2025. *Id*. At Step Two, the ALJ determined that Woodell has the following severe impairments: coronary artery disease with stent placement and atherosclerotic heart disease, obesity, chronic obstructive pulmonary disease (COPD)/asthma, degenerative disc disease of the lumbar spine with grade one anterolisthesis, right chondromalacia with degenerative meniscal tear and degenerative joint changes and knee pain. (Tr. at 17).

At Step Three, the ALJ decided that Woodell's impairments did not meet or equal

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity, (2) if not, whether the claimant had a severe impairment, (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment, (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work, and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

a Listing.³ (Tr. at 18–19). The ALJ then determined that Woodell has the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) can have no more than occasional exposure to dusts, fumes, smoke, and other pulmonary irritants, and (2) can no more than occasionally climb, stoop, bend, kneel, crouch, and crawl. (Tr. at 19).

At Step Four, the ALJ relied upon vocational expert ("VE") testimony to determine that Woodell could return to performing past relevant work as a laser machine operator. (Tr. at 26). Notwithstanding, the ALJ continued to Step Five to determine, based on VE testimony and Woodell's age, education, work experience and RFC, that there are jobs in the national economy that Woodell can perform. (Tr. at 26–28). Therefore, the ALJ concluded that Woodell was not disabled. *Id.*

## III.  DISCUSSION

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42

---

³ 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404,1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Additionally:

> The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' . . . That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (emphasis in original) (internal citations omitted).

U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Woodell's Arguments on Appeal

Woodell contends that the evidence supporting the ALJ's decision is less than substantial. Specifically, Woodell argues that: (1) the RFC for light work with postural limitations did not fully account for his alleged difficulty with walking and standing, (Doc. 9 at 3–20), and (2) the ALJ erred in relying upon medical opinions from Disability Determination Services ("DDS"), which were issued before some of the relevant medical

evidence was available, *id*.[4] The Court will address each of Woodell's arguments, in turn.

### 1.     The ALJ's RFC finding was supported by substantial evidence.

Woodell first takes issue with the ALJ's RFC determination at Step Three. Woodell avers that the RFC for light work did not fully incorporate his limitations.[5] (Doc. 9 at 3–20). In particular, Woodell contends that knee and back pain prevent him from working. *Id.* at 8–12. The ALJ's RFC was supported by substantial evidence, however, and the Court finds no error.

The Court begins by recounting the ALJ's thorough discussion of Woodell's medical history. With respect to Woodell's cardiac issues, Woodell underwent a cardiac catheterization on June 11, 2020, which somewhat lessened his chest pain. (Tr. at 428–430). By June 29, 2020, he had improved—save some shortness of breath likely due to "deconditioning and side-effects of brilinta"—and was cleared to return to work. (Tr. at 21, 432, 434). At that time, an EKG showed no ischemic findings. (Tr. at 21, 434). As the ALJ emphasized, subsequent treatment notes reveal stable cardiac function without

---

[4] Social security disability applications are initially processed through a network of local SSA field offices and State agencies called Disability Determination Services or DDSs. Additionally, the Court observes that, under the Medical-Vocational Guidelines, once you reach the age of 50 (and have no transferable skills or education that allows direct entry into skilled work), the Guidelines direct a finding of "disabled" at the sedentary exertional level. *See* 20 CFR Part 404, Subpart P, Appendix 2; SSR 83-11. Thus, if the ALJ had found that Woodell could only perform work at the sedentary level, a finding of disabled would have been mandatory.

[5] "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citation omitted). "In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) (citation omitted). Additionally, the controlling SSA regulation defines light work as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 C.F.R. §§ 404.1567; 416.967.

evidence of deterioration. (Tr. at 21). Specifically, as the ALJ explained, follow-up notes after treatment showed significant improvement in Woodell's cardiac condition. *Id.* In fact, a November 2, 2020 angiography showed "patent right coronary artery stent and non-obstructive coronary atherosclerosis with an ejection fraction of 60 percent, without left ventricular wall motion abnormality," and December 2020 imaging found "no significant arterial abnormality[.]" (Tr. at 21, 584–585, 608). The ALJ concluded that these records "show[] that [Woodell] had no residual coronary artery disease[.]" (Tr. at 21).

Later medical records suggest that Woodell's cardiac condition remained stable. For example, at a February 2, 2021 cardiology visit, Woodell complained of ongoing fatigue and mild edema, and, while he did have generalized edema, there was no "clubbing, cyanosis, skin discoloration, or varicosity [or] evidence of wounds or ischemia." (Tr. at 21, 617). And the review of systems showed no "fatigue, shortness of breath at rest, shortness of breath with exertion, leg cramps, weakness, muscle pain, back problems, wheezing, chest pain at rest, erythema, dizziness, fainting, headaches, spider veins, or cold extremities." (Tr. at 21, 618–619). A Doppler test on January 19, 2021, showed "no evidence of a deep venous abnormality." (Tr. at 21, 620). Finally, as the ALJ observed, Woodell has not had a revision procedure relating to his cardiovascular disease since 2020. (Tr. at 24). Because the ALJ found that "Woodell's heart disease [is] not as severe as

[Woodell] alleged," the ALJ found that it did not prevent him from doing light work.[6] (Tr. at 24).

Concerning Woodell's lungs, a March 30, 2021 pulmonary function test ("PFT") showed significant respiratory deficits, and a July 6, 2021 visit resulted in findings suggestive of severe lung disease. (Tr. at 669–671, 686). But, as the ALJ observed, "there has been no similar or more severe finding relating to COPD since July 2021." (Tr. at 22). At his hearing, Woodell testified that he still smokes five cigarettes per day. (Tr. at 46). In his opinion, the ALJ noted that Woodell "has not had frequent emergency room or hospitalization since January 2021 despite his complaints of severe COPD and heart disease." (Tr. at 24). To account for Woodell's complications from COPD, however, the ALJ limited Woodell to "the occasional exposure to concentrated pulmonary irritants."[7] (Tr. at 22).

Regarding Woodell's knees, the ALJ noted that Woodell did not complain about knee pain until March of 2021. (Tr. at 22, 672). Specifically, on March 15, 2021, Woodell went to the emergency room, reporting that he hurt his right knee while *painting baseboards*. (Tr. at 22, 672–676). He said the pain was mild in nature, and clinical exam showed that range of motion in his lower extremities was normal. (Tr. at 675). Woodell

---

[6] The ALJ also observed that more recent treatment notes did not reflect more than a trace edema on a couple of occasions since January 2021. (Tr. at 24, 695–762, 773–831).

[7] On July 28, 2021, Woodell reported bilateral edema. (Tr. at 22, 736). Woodell admitted to not taking his medication consistently, including his Lasix and inhaler. (Tr. at 22, 736). The ALJ found that "[s]uch clinic notes and clinical findings are supportive of only benign limitations and do not support significant edema, breathing difficulty, or musculoskeletal problems." (Tr. at 22).

had normal motor strength and sensation, with a normal gait. *Id*. X-rays of the knee were negative for acute findings. *Id*.

An April 13, 2021 MRI of the right knee revealed prominent chondromalacia patellofemoral compartment, mucoid degeneration of the cruciate ligaments with suggestion of interstitial tearing of posterior ligament, non-displaced tearing of the anterior horn meniscus, possible non-articular nondisplaced tear posterior horn medial meniscus, minimal tendinosis extensor mechanism, popliteus tendon, and semimembranosus. (Tr. at 666). While these readings certainly show that Woodell had some difficulty with his knees, Woodell was treated conservatively with medications for pain; when he told his pain management doctor that traditional medication was not entirely relieving his pain, he underwent steroid injections in his knees in March and April 2022. (Tr. at 773–774, 780–788). Woodell also underwent physical therapy for his knees, and his therapist instructed him to perform gentle exercises at home to relieve pain.[8]  (Tr. at 791–795).

Finally, although Woodell told his pain management APRN on October 12, 2022, that he had increased pain and tried physical therapy without success, he *also* told the APRN that hydrocodone helped significantly with pain.[9] (Tr. at 813). So, the APRN prescribed him hydrocodone. *Id.* To account for the "combined effects of Woodell's

---

[8] A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

[9] "Impairments that are controllable or amenable to treatment do not support a finding of total disability." *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999).

impairments" related to his knee and other lumbar impairments, the ALJ limited Woodell to light work and restricted Woodell to occasional postural activities. (Tr. at 25).

Turning to Woodell's back, X-rays of his lumbar spine taken in July 2021 showed grade II spondylolisthesis at L5-S1 with suspected bilateral spondylolysis. (Tr. at 738). At an August 2021 visit to his doctor, a musculoskeletal exam of the lumbar spine was grossly normal, though "palpation of lumbar facet joints at L3-4, 1.4-5, and LS-S1 levels reproduced lower back pain." (Tr. at 705). At a September 2021 clinic visit, his doctor told him to maintain normal activities without restriction and instructed him to follow up in two months—no emergent care required. (Tr. at 698).

A May 2022 MRI of Woodell's lumbar spine showed mild disc bulge and right foraminal disc protrusion with severe right and moderate left neural foraminal narrowing at L5-S1 but without spinal canal stenosis. (Tr. at 815–821). The MRI also showed, however, normal curvature of the spine and normally maintained vertebral bodies. *Id*. And there were no concerning soft tissue abnormalities. *Id*. While Woodell reported increased pain on October 12, 2022, as the ALJ noted, no physician indicated a work restriction relating to the knee or spine disorder. (Tr. at 26, 810–814). And, as the Court mentioned above, at the October 12, 2022 visit, Woodell told the pain management APRN that hydrocodone helped significantly with his pain. (Tr. at 813). Accordingly, the APRN prescribed it. *Id*. Again, to account for his back and other related impairments, the ALJ limited Woodell to light work and restricted Woodell to occasional postural activities. (Tr. at 25).

Taking all of these medical records together and noting that: (1) in spite of chronic

COPD and breathing issues, Woodell continued to smoke, against his doctor's advice,[10] and (2) Woodell responded positively to pain medication, an RFC for light work with some pulmonary limitations and "occasional" postural limitations properly accounted for Woodell's impairments and was supported by substantial evidence—namely, Woodell's medical records.

### 2. The ALJ did not err in relying on DDS medical opinions.

Woodell also argues that the ALJ erred in relying on the two DDS medical opinions from Dr. Ramona Bates, M.D., and Dr. James Hinchen, M.D. Namely, Woodell argues that, considering later-provided evidence of deterioration in Woodell's condition, the ALJ "improperly concluded that the additional evidence received following the opinions of Drs. Bates and Hinchen actually further supported the physicians' light exertional RFC." (Doc. 9 at 6). In sum, Woodell implies that the ALJ had no basis for this conclusion. The Court disagrees and finds that the ALJ properly evaluated the DDS opinions and the medical record.

To begin, the Court discusses the consultative examinations and DDS opinions in chronological order. A consultative examiner, Dr. Sudhir Kumar, saw Woodell in May 2021. (Tr. at 684–694). Dr. Kumar found that Woodell had normal gait and station, negative bilateral straight-leg raise, normal sensation and reflexes, no muscle atrophy, and normal range of motion in the spine. (Tr. at 688–692). Dr. Kumar opined that Woodell would have moderate to severe limitations in all physical abilities. (Tr. at 692). The ALJ

---

[10] *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders).

found that this opinion was inconsistent with generally mild clinical findings and routine treatment. (Tr. at 26). Likewise, the ALJ found this opinion unpersuasive because it did not give any specific functional restrictions, such as how long Woodell could sit or stand or how much he could carry. *Id*.

Subsequently, two DDS medical experts, Dr. Ramona Bates, M.D., and Dr. James Hinchen, M.D., reviewed Woodell's records. The doctors issued opinions that Woodell could perform work at the light exertional level with some limitations. (Tr. at 85–101, 113–119). Specifically, on July 13, 2021, Dr. Ramona Bates, M.D., found that Woodell could stand for 6 hours in an 8-hour workday and could "occasionally" crawl, crouch, kneel, stoop, balance, and climb ladders, ropes, scaffolds, stairs and ramps. (Tr. at 94–95). Dr. Bates also found that Woodell should avoid even moderate exposure to pulmonary irritants. (Tr. at 96). On November 23, 2021, Dr. Hinchen evaluated Woodell's medical records and agreed that Woodell could perform light work with the same additional limitations noted by Dr. Bates. (Tr. at 116–119).

For the most part, the ALJ found the two DDS opinions to be well-supported and consistent with the record.[11] (Tr. at 25–26). While Woodell argues that medical evidence *after* November 2021 showed deterioration, and, therefore, the ALJ was not entitled to rely upon the pre-November 2021 DDS opinions, that is not the entire story. To be sure, the post-November 2021 medical records include, non-exhaustively: (1) complaints of increased pain, (Tr. at 813), and (2) an MRI of Woodell's back, indicating "severe right

---

[11] The ALJ disagreed with the doctors' broad pulmonary limitations because such limitations were inconsistent with the totality of the medical record. (Tr. at 26).

11

and moderate left foraminal narrowing at L5-S1," *id.* But, at his October 12, 2022 visit regarding the increased pain and MRI results, Woodell noted that hydrocodone helped his pain significantly. (Tr. at 813). Woodell was prescribed hydrocodone at that visit. *Id.* Additionally, the later medical records did not show significant changes, and treatment continued to be conservative.[12] (Tr. at 24–25, 817, 826–828). Specifically, the record continued to show evidence of conditions that would cause pain, but that pain would not be disabling. In fact, the ALJ discussed the post-November 2021 developments at length:

> The May 10, 2022 treatment notes documented lower back and neck pain, which he rated as a three out of ten, ten being the most severe pain. He reported having intermittent flare-ups of pain which would go as high as eight. He reported that the steroid injections did not improve his pain level. He was noted to have a BMI of 38.00. An examination of the knees showed diffuse tenderness anteriorly but revealed no swelling or effusion. The range of motion was normal but painful. He had crepitation. McMurray's test was negative. Anterior drawer sign was negative. Posterior draw sign was negative. The May 10, 2022 treatment notes did not reveal edema. The May 25, 2022 MRI imaging of the lumbar spine showed mild disc bulge and right foraminal disc protrusion with severe right and moderate left neural foraminal narrowing at L5-S1, but the remaining findings were not suggestive of more than mild degenerative changes. There was no evidence of spinal canal stenosis. The claimant presented with flare-ups of chronic back pain on October 12, 2022. … He complained of increased lumbar, left hip, and left lower extremity pain. He was prescribed hydrocodone [but] [t]he October 12, 2022 did not show clinical findings relating to the lumbar spine despite his complaints of significant pain. The undersigned finds that these pain management notes at Exhibits 19F and 20F reflect some physical limitations but do not reflect clinical and diagnostic findings that would support the standing, walking, sitting, lifting, and postural limitations the

---

[12] The Court discusses Woodell's October 12, 2022 surgical consult referral in footnote 13, *infra.*

>claimant described at the hearing. These objective findings do not support more than moderate knee and lumbar impairments.

(Tr. at 24–25) (cleaned up). The ALJ then observed that no physician gave Woodell work restrictions related to his spine; no physician recommended an assistive device; and "no physician recommended surgical intervention."[13] The ALJ found that such facts "show that Woodell was not severely limited in his ability to stand or walk" despite his alleged inability to walk more than 100 feet. (Tr. at 25). Even with these concerns, the ALJ noted that he did consider the combined effects of the impairments in limiting Woodell to light work and occasional postural activities. *Id.*

Considering the above, the Court finds no error in the ALJ's determination regarding the post-November 2021 evidence and the DDS findings. The ALJ found that—despite the evidence of deterioration—light work was still appropriate based on *all* clinical findings. Moreover, Woodell was able to do things like perform light housework, help with his grandkids, and ride a lawnmower.[14] (Tr. at 25, 55–56, 296–299, 335–336). The medical record certainly supports Woodell's complaints of some pain. But reading the record *in its*

---

[13] The ALJ's point regarding surgery is not entirely consistent with the record, but it can be reconciled. First, a phone call note dated May 10, 2021, suggests that, if Woodell's knee does not improve with injections, NSAIDs, and home exercise therapy, then the provider "would consider arthroscopy." (Tr. at 753). But this is not a direct surgical referral. Second, on October 12, 2022, Woodell's pain management APRN referred him for a surgical consult. (Tr. at 813, 806). But a referral for a surgical consult is not the same as a surgeon's recommendation for surgery. Additionally, given the timing of the evidence supplementation in this case, (Tr. at 803), the record lacks any evidence beyond the existence of the referral itself.

[14] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

13

*entirety*, Woodell has not shown that the ALJ erred in his findings regarding the post-November 2021 medical evidence.[15]

## IV. CONCLUSION

There is substantial evidence to support the Commissioner's decision that Woodell was not disabled. The ALJ properly relied upon the DDS medical opinions and the RFC incorporated all of Woodell's credible limitations.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 29th day of April, 2025.

*/s/ Benecia Moore*
UNITED STATES MAGISTRATE JUDGE

---

[15] The Court is also mindful that it may not reverse a prior determination based only on a finding that substantial evidence would support an opposite decision. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).